William D. DOLAN, Appellant
Below, Appellant,

v.

Robert MAXWELL, Sidney Bennett, Vernon Dibeler, Arnold Brown, Karl Birks, William Trainor, Individually and composing the Commissioners of Bethany Beach; Warren Zitzmann, Sidney Bennett, Robert Halbrook, Individually and composing the Board of Adjustment of Bethany Beach and Alice M. Cotter and Ellyne C. Immer, Appellees Below, Appellees.

Supreme Court of Delaware.

Submitted Oct. 10, 1979.

Decided Feb. 26, 1980.

Michael J. Rich, of Dunlap, Holland & Eberly, Georgetown, for appellant.

Robert L. Halbrook, of Wilson, Halbrook, Bayard & Bunting, Georgetown, for appellees Bethany Beach.

Joseph Whitmore Maybee, Dover, for appellees Alice M. Cotter and Ellyne C. Immer.

Before HERRMANN, C. J., and McNEILLY and QUILLEN, JJ.

PER CURIAM:

Appellant, Dr. William D. Dolan, challenges in this Court the Superior Court's affirmance of a building permit issued by the Town of Bethany Beach, the issuance of which had been challenged before and up-

held in modified form by the zoning Board of Adjustment of Bethany Beach. In particular, the permit as issued by the building inspector authorized "replacement of the Immer cottage" while the modifying order authorizes a "garage apartment" only.

The appellant is an adjoining landowner to the applicant appellees, Ellyne C. Immer and Alice M. Cotter, in whose favor the permit was issued. The permit allows them to reconstruct on their property a garage apartment as an accessory building to their main dwelling house as permitted by the 1954 Zoning Ordinance. The land in question consists of two five thousand square foot lots with the main dwelling straddling the boundary line of the two lots. The former building, originally a garage, had over the years through a series of alterations been converted into a detached single family dwelling unit. It was destroyed by fire in 1976. Appellant seeks to bar the appellees from rebuilding anything but a garage, basing his claim on the Town of Bethany Beach Zoning Ordinance of 1972 which only permits a non-conforming use to continue if that use was "lawfully existing" at the time of its enactment.[1] Because of the history of alterations of the structure, the appellant claims, it was not a lawfully existing use in 1972. He further argues that, even if a non-conforming use could be said to exist in 1972, it was discontinued for more than one year and thus abandoned.[2]

When the owner preceding the appellees, Courtney Johnson, bought the property in 1960, the structure was a two-car garage. Johnson secured a building permit in 1962 to convert the garage into "living quarters." On the ground floor he removed the space for one car and put in a kitchen and living room. He put bedrooms on the second floor. Although it appears that the owner retained a portion of the structure for use as a garage, it is factually significant, as noted in appellees' brief, that the approved permit for the renovation did not restrict residential habitation to a part of the structure. But, under the Zoning Ordinance of 1954 then in effect, only one single dwelling unit was authorized for a lot area of five thousand square feet. Zoning Ordinance of 1954, Sec. 402.

Johnson sold the property to the appellees in 1965. In 1966, the appellees applied for and obtained a permit to erect a sunporch on the second floor. At the same time they put tile on the floor of the garage portion and changed the garage door to a bay window. There is no public record of their having applied for or received a permit for this alteration, although they assert that the contractor did so and it simply was misplaced.[3] After this time the garage use was by their admission discontinued. Under the current 1972 Ordinance, garage apartments are not authorized in residential districts.

Appellant asserts that the exclusive residential use of the building may not be re-established because it was not lawfully existing at the time of the 1972 Ordinance's enactment in that two single family detached dwellings had not been permitted on

1. Article VI, Section 601 of the 1972 Ordinance provides:
"Nonconforming Uses and Structures Permitted.
"Except as herein specified, the use of any building or land otherwise lawfully existing at the time of the enactment of this ordinance may be continued although such use does not conform to the permitted use or dimensional provisions of this ordinance."

2. Article VI, Section 603 of the 1972 Ordinance provides: ·
"Section 603. Abandonment.
"Whenever a nonconforming use has been discontinued or in a nonoperative status for a period of one (1) year or more, such use shall not thereafter be re-established, and any future use shall be in conformity with the provisions of this ordinance."
The similar provision under the Zoning Ordinance of 1954 was Sec. 300 which provided for a two-year period.

3. To the extent that the appellees' assertion rests on confidence in their contractor, it should be noted that, since the 1962 permit allowed conversion of the structure to "living quarters", a reasonable contractor might have erroneously believed the change of the garage door to a bay window was a mere repair not requiring a permit. Zoning Ordinance of 1954, Article G, Sec. 705.

one lot[4] and no permit had been issued for the 1966 alteration as was required by the 1954 Ordinance, Article G, Sec. 704, in effect in 1966. He further asserts that a garage apartment may not be rebuilt because the garage use of the structure has been abandoned for more than one year and, according to Article VI, Section 603 of the 1972 Ordinance, a non-conforming use that has been abandoned for that long may not thereafter be re-established.

Appellant also challenges the inadequacy of the record on appeal. He argues that the conclusory findings of the zoning Board of Adjustment leave the appellate tribunal with no way of knowing what the fact-finding body relied on in reaching its decision. The record before us consists of the minutes of two meetings of the Board held on April 16, 1977 and July 23, 1977. At those meetings the relevant facts were established. The Board approved a motion to reissue a permit to rebuild the structure as it had existed prior to the discontinuance of the garage use in 1966, but did not state any reasons for approving this motion. It should be noted that the appellees agreed to the garage-apartment limitation in the proceedings before the Board.[5] The appellant, on the other hand, at the suggestion of compromise, indicated he would "just as soon shut that off."

The Superior Court declined to modify the decision of the Board of Adjustment, finding, without elaboration, "substantial evidence in the record to support the decision". While the record is admittedly a difficult one to review, we assume the appeal was properly taken[6] and we affirm.

Under the 1954 Zoning Ordinance, a "garage apartment" was clearly an authorized use in residence districts. Zoning Ordinance of 1954, Article D, Sec. 400. Garage apartment was defined as "[f]acilities for human habitation and which facilities are erected over, or adjoining, or attached to or under the same roof, as a private garage." Article A, Sec. 108. Thus, while the 1962 permit authorizing conversion of the two-car garage into "living quarters" is open-ended, the improvements actually made by Mr. Johnson at that time were clearly proper and the building was limited to a proper garage apartment use at the time of its sale to the appellees.

Without reliance on the appellees' assertion that a building permit application was made for the change of the garage door to a bay window in 1966, we find the 1962 approval of a permit "to convert a two-car garage . . . into living quarters" in effect officially created confusion as to what structures were authorized. This confusion continued to exist at the time of the 1972 Zoning Ordinance when the former garage structure, whether garage apartment or separate living quarters, ceased to be authorized except to the extent it could be preserved as a non-conforming use.

The appellant's argument that, since the structure was used as separate living quarters at the time of the adoption of the 1972 Code, its "illegal" use could not become a non-conforming use, goes too far on these peculiar facts.

In light of the uncertainty created by the 1962 permit, it would be patently unfair

---

4. Zoning Ordinance of 1954, Article D, Sec. 402. Since the property in question consists of two lots 40 feet by 125 feet, it might be possibly argued that both structures could legally exist under the 1954 Ordinance as single family detached dwellings. But both the main dwelling and the accessory building, after the addition of the sunporch in 1966, straddled the record lot line and Section 501 of the 1972 Code speaks specifically of "any lot of record". In light of the decision below and the position of the appellees, in effect accepting the limitations of a garage apartment, it is not necessary to consider this possibility and the other provisions of the ordinance which might have to be

taken into account. Thus, in this opinion, we assume it would have been improper under the 1954 Ordinance for both structures to exist as single family detached dwellings.

5. The 1972 Ordinance permits the rebuilding of non-conforming uses destroyed by fire. Article VI, Section 606.

6. The appellees claim the Superior Court should have dismissed the proceeding for lack of subject matter jurisdiction because appellant filed no verified petition for a writ of certiorari. 22 Del.C. § 328.

and unduly technical to bar the appellees from rebuilding a garage apartment which was clearly authorized under the 1954 Code. The destroyed structure should at the very least be considered as a garage apartment which was inadvertently converted into "living quarters" with official sanction. The remedy for the error is not to make the very existence of the building illegal but to regard and require the building to be treated in strict conformity to the lawful requirements which should have governed its use. To put it another way, while the official sanction of the 1962 permit could not make legal that which was not permitted under the 1954 Ordinance, it should nonetheless prevent the destruction of an accessory use which was legally permitted, factually authorized and originally intended. Thus, we agree with the Board that, under these circumstances, the structure at the very least did not lose its legal status as a garage apartment and, for similar reasons we do not regard its use as a garage apartment to have been abandoned.

While the Board did not particularize with any precision the reasons for its decision, it is apparent from the minutes that it was struck by the patent unfairness in disallowing a non-conforming use in its entirety. On the facts of this case, we find that there is substantial evidence in the record to support the determination that the garage apartment use was legal at the time of the adoption of the 1972 Zoning Code and not abandoned thereafter.

The judgment of the Superior Court is affirmed.